UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

Richard Charles Gentry #132047
(Enter above the full name of the plaintiff(s), including prisoner number, in this action. If you cannot list all plaintiffs in the space provided, please write "see attached" and list all names on an additional page.)

FILED - GR
March 8, 2024 1:05 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW SCANNED BY: KB/3/8

1:24-cv-240
Sally J. Berens
U.S. Magistrate Judge

v.

Grand Prairie Healthcare Services, P.C.
"see attached"

(Enter above the full name of the defendant(s) in this action. If you cannot list all defendants in the space provided, please write "see attached" and list all names on an additional page.)

## COMPLAINT
*(Print Clearly)*

I. **Previous Lawsuits**
   **CAUTION:** The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in federal courts without prepayment of the civil action filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding *in forma pauperis* and require you to pay the entire $405.00 filing fee regardless of whether your complaint is dismissed.

   A. Have you ever filed a lawsuit while incarcerated or detained in any prison or jail facility? Yes ☒ No ☐

   B. If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below. Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

   1. Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.
      U.S. District Court For The Western District of Michigan

   2. Is the action still pending? Yes ☐ No ☒
      a. If your answer was no, state precisely how the action was resolved: Dismissed: Failed to exhaust; and failed to state claim for deliberate indifference.

   3. Did you appeal the decision? Yes ☐ No ☒

   4. Is the appeal still pending? Yes ☐ No ☒
      a. If not pending, what was the decision on appeal? _____

   5. Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit? Yes ☒ No ☐
      a. If so, explain: Deprivation of medical treatment, and/or services. Different circumstances, and defendants.

- 2 -   (W.D. Mich. Form – Last Revised: September 2021)

Attachment to Page 2.

Grand Prairie Healthcare Services, P.C.
Doctor Coleman
Margaret Ouellette
Nathan Mikel
Sarah Riley
Connie Lester

## II. Parties

### A. Plaintiff(s)

Enter your name, place of confinement, address, and place of confinement during the events described in the complaint in the blanks below. Provide the same information for any additional plaintiffs. Attach extra sheets as necessary.

Name of Plaintiff **Richard Charles Gentry, #132047**
Place of Present Confinement **Lakeland Correctional Facility**
Address **141 First St., Coldwater, Mich. 49036**
Place of Confinement During Events Described in Complaint **Same as above.**

### B. Defendant(s)

Complete the information requested below for each defendant in this action, including whether you are suing each defendant in an official and/or personal capacity. Provide the same information for each additional defendant. If there are more than six defendants attach extra sheets as necessary.

Name of Defendant #1 **Grand Prairie Healthcare Services, P.C.**
Position or Title **Contractor with the State of Michigan**
Place of Employment **Unknown (Michigan)**
Address
Official and/or personal capacity? **Both**

Name of Defendant #2 **Doctor Coleman**
Position or Title **Physician**
Place of Employment **Unknown (Michigan, Employed by State, or Contractor)**
Address
Official and/or personal capacity? **Both**

Name of Defendant #3 **Margaret Ouellette**
Position or Title **Physician Assistant**
Place of Employment **Lakeland Correctional Facility**
Address **141 First St. Coldwater, Mich. 49036**
Official and/or personal capacity? **Both**

Name of Defendant #4 **Nathan Mikel**
Position or Title **Health Unit Manager (HUM)**
Place of Employment **Lakeland Correctional Facility**
Address **141 First St. Coldwater, Mich. 49036**
Official and/or personal capacity? _____

Name of Defendant #5 **Sarah Riley**
Position or Title **Nurse Practitioner**
Place of Employment **Unknown - Previously: Lakeland Correctional Facility**
Address **141 First St. Coldwater, Mich. 49036**
Official and/or personal capacity? **Both** *"see attached"*

- 3 -

Attachment to Page 3.

Defendant #6. Connie Lester
Title: Health Information Manager (HIM)
Place of Employment: Lakeland Correctional Facility
Address: 141 First St. Coldwater, Mich. 49036
Official and/or personal capacity: Both

## III. Statement of Claim

State here the **facts** of your case. Describe how each defendant is personally involved. Include also the names of other persons involved, dates and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. **Do not include unrelated claims.** Use as much space as you need. Attach extra sheets if necessary.

The "facts" will illuminate that the named defendants violated my Eighth, and Fourteenth, amendment rights; ADA; Federal Rule of Civil Procedure, and a Monell claim may attach.

I am a novice in both law and medicine, so I ask that the court would afford me some grace, as I study and research, while charting this path to present my complaint. I ask the court to yield leave for me to invoke Supplemental Jurisdiction; a State law claim that pertains to "gross negligence; continuing harm, continuing injury, and/or continuing-violations exception.

The named defendants, in this complaint, were complicit in adherence to pattern, protocol, and/or policies, that "delayed," and/or "denied," plaintiff medical services, to address his "serious medical needs." Defendants were informed of plaintiff "symptoms" via medical kites, word of mouth, and/or "assessments," but plaintiff plea for medical services went unheeded. The first "assessment" of my "symptoms" occurred on March 25, 2022, but the "pattern" to delay was already being implemented; causing the plaintiff to endure intense discomfort, and often times, severe "chronic pains" that extended, unnecessarily, for an substantial period of time. The "seriousness" of plaintiff "medical needs" were documented in June of 2022.

I contend, with intent to substantiate, "Grand Prairie Healthcare Services" implemented, or adhered to, custom, protocol, and/or policies, that ~~for practice of~~

"see attached"

"Statement of Claim" cont'd. 1.)
allowed for continuance of unconstitutional practices to occur. While under contract to provide healthcare services to Michigan prisoners, this defendant breached their contract, when they failed to yield services to the plaintiff "serious medical needs." They remained non-responsive to plaintiff medical kites, beginning May 1, 2022 through July 29, 2023; and a grievance filed on May 5, 2022. I contend, with intent to substantiate, that "Grand Prairiew" was grossly negligent in supervising their subordinates, who committed wrongful acts, and failed to remedy these wrongs. Their custom, protocol, and/or policies, are vague attempts to veil their responsibility; clothing subordinates with authority to determine which prisoner receives medical treatment, and when.

PA, Ouellette, as my "medical provider" for years, was well aware of my medical history, my pains, and "symptoms." I inform her of "infrequent" pain in my lower, back, and extremities. She offered: "You're getting old," and suggested that I walk, and exercise, more often. I kited Ms. Ouellette in December of 2021, in contemplation of my up and coming, scheduled "chronic care visit" in March of 2022, and advised that my pains were becoming more frequent. When I learned that scheduled visit would not be forthcoming,

"Statement of Claim" cont'd. 2.)

I sent kites to healthcare; presented there on March 25, 2022, and nurse Schultz did the first "assessment" of my "symptoms." She advised that I limit all activities, and that my provider would call for me, soon. "Soon" turned out to be May 18, 2022, several kites and 2 grievances later. This is when PA Ouellette did an "assessment," and advised that my symptoms seem to indicate I have "nerve damage," which we had discussed, and considered, before. She said "protocol" required that she start with x-rays, physical therapy, and EMG.

It was May 2, 2022, when I'd got a kite response from the HUM, Nathan Mikel: "You have submitted one kite for pain since December 2021..." after I'd explained my continuing dilemma. I'd contend, with intent to sustain, Nathan Mikel was grossly negligent in supervising his subordinates; was complicit to the pattern, and/or protocol, to "delay," and/or "deny," the plaintiff medical services. I sent the HUM over a dozen kites, beginning May 1, 2022 through June 14, 2023; and filed 2 grievances against him, on 5/11/22, and 5/20/22, all to no avail. I kited the HUM on 10/20/22, after my provider had advised of an EMG request: "...Ouellette has failed to provide treatment, or treatment plan..." he responded: "That is the treatment plan." On 12/12/22, via Mikel, I

"Statement of Claim" cont'd. 3.)
learned the EMG request was "denied," and "... plan will be discussed at next appointment with your provider," which was scheduled for March 2023, a "chronic care visit" with PA, Ouellette, but I never got that visit.

    Beside from the discomfort, and pains, during this pattern of continuing to "delay," services they knew, or should have known, were inevitable, I was restricted from participating in, most, physical activities, and contests, that offered benefits, or compensation. I was limited to which jobs I could perform, thus limiting my "State pay" (Monthly stipend).

    After x-rays were done on June 13, 2022, it would be September 13, 2022 before I'd hear of the results, which normally takes a few weeks. At this, brief, "chronic care visit" on 9/13/22, PA, Ouellette advised that she had seen a "scrunched up disk," but couldn't identify at which vertebrae. She added: "You have degenerate disk disease," as she escorted me from her office, citing: "I have a client waiting, kite me; I'll call you back." She called me back on October 18, 2022, and simply said she was requesting an EMG.

    Doctor Colemans' complicity to the "pattern" of "delaying" was, extremely, detrimental. He extended the "delay" to where it seemed (it would

"Statement of Claim" cont'd. 4.)
be indefinite. This doctor I had never seen, or heard of, not before or after his "denial." He made an "conscientious" decision to interrupt a prescribed "treatment plan" for non-medical reasons. He disagreed with a "qualified health professional," who had been my "primary" medical provider for years; directly participating in a constitutional violation. His action was egregious, deliberate, "grossly" negligent, and possibly, irreparable. The, future, ramifications of his action is yet to be determined; but the immediate effect was unconscionable, and devastating. He forced, further, continuance endurance of intense discomfort, and pains; anxiety, and emotional distress. It is my contention, and opinion, that any defendant that had authority to remedy this wrong, and didn't, is "directly" culpable.

 Health Information Manager (HIM), Connie Lester, made a conscientious decision to be complicit in the "pattern" by "denying" the plaintiff access to his medical records, "delaying" medical services, in violation of MDOC policy directive, and Federal rule. I kited Ms. Lester on 10/5/22, and sent over a half dozen, more, kites before filing a grievance on 12/22/22. Ms. Lesters' action deprived me of the opportunity to see, what Ouellette had described as a "scrunched up disk," and/or to compare the image(s)

"Statement of Claim" cont'd. 5.)
with one from a previous procedure, that would enable the plaintiff to decide, not Ms. Lester, if the image(s) be seen outside the facility.

I went to healthcare on May 4, 2023, anticipating it being my past-due, scheduled, March "chronic care visit" with PA, Ouellette; she was standing in the hallway, making small with colleagues; as I was escorted pass her, introduced to a new hire, Ms. Riley, as my "new" medical provider. This meeting was disasterous; Ms. Riley was belligerent. As I sat in her office, she came from behind her desk, walked to where I was sitting, stood over me, and talked down at me, as if I were her child. Eventually dismissing me, by loudly shouting: "GET OUT!" On 6/12/23, I was called to see Ms. Riley, again; surprisingly, she asked: "Is this the first time that we've met?" Before I answered, she'd walk by me; I sat on my rollator, in the doorway to her office, I didn't want to be in the room, alone, with Ms. Riley. She consulted her computer, and exclaimed: "Oh, you're here to have your blood pressure, and breathing checked." I interjected: "I'm here for a chronic care visit.", which she ignored; approached me with her stethoscope, listened to me breathe, then said: "You can go." Within 2 months, she was no longer at this facility. At both appointments, 5/04/23, and 6/12/23, Ms. Riley failed

"Statement of Claim" cont'd. 6.)
to yield plaintiff a "chronic care visit" in accordance with MDOC policy directive. She was complicit with the "pattern" to "delay" and "deny" the plaintiff medical services to address his "serious medical needs;" feigning oblivion to his pain. Later, I was told, via kite response: "Medication will not be renewed per your provider." I filed a grievance against Ms. Riley on June 19, 2023; as of this writing, 03/04/24, I have not received a step 3 response, and not for my lack of trying.

    July 14, 2023 I presented at healthcare; I was there, over an hour. Ms. Ruhs did an "assessment," wrote notes; provided print-outs of exercises, and "advertisements." Eventually, I asked to be referred to a provider; she replied that "policy" required I have 3 assessments before she referred me to a provider.

    I presented at healthcare, again, on 7/21/23; talked with Ms. Bowerman, who reiterated the 3 assessment "policy," and added: "Lets get it done." I declined, and left without being "assessed."

    I kited "Grand Prairie..." on 7/29/23; HUM, Mikel responded on 7/31/23: "... you need to kite healthcare...", but I didn't. My next kite, I wrote, to "Inmate Accounting" on August 10, 2023, and was amazed at how, abruptly, the "pattern" of "delaying" was disrupted. Before I'd receive my "account activity" certificate, on 8/14/23, I was

"Statement of Claim" cont'd. 7.)
called to healthcare. Soon as I was seated in Ms. Groff's' office, she asked: "What can I do for your back, Mr. Gentry?" I reiterated what I had told so many, other, "qualified health professionals;" she consulted her computer, we talked, and she advised that she would resubmit an EMG request. In 4 days I received forms, 8/18/23, and a, brief, note: "You have been approved..." I received pain medication within 2 days. The EMG was done on 10/16/23; I seen Ms. Groff on 11/03/23, she advised of the EMG results, and that I'd have an MRI in December.

    Just a note of observation; I had written 60 plus kites, kites, and letters; filed a number of grievances, all to no avail. I had, at least, 3 "assessments," and documentation of a "serious medical need;" but the "pattern" continued, to "delay," and "deny" medical treatment. I had no more "assessments;" didn't write another letter, or grievance. I wrote, only, one more kite, to "inmate accounting," and wheels began to spin. At this juncture, the facility had, only, 2 "medical providers," lieu of the, usual, 4 to 6.

    December 8, 2023, I went to Henry Ford Hospital for an MRI; an attempt at a "scan" failed, due to difficulties accessing a vein.

"Statement of Claim" cont'd.  8.)

An anesthesiologist was called, who also failed to access a vein; she offered to go and retrieve an ultrasound machine, to enable her to access the vein. The MDOC transportation officer objected, citing an inconvenience to his work schedule. The technician chimed in: "They can send it back for it." I was appalled, at the value they were assessing to my health, possibly, my life. How could the transportation officer, schedule, deny plaintiff medical services? As of this writing, 03/04/24, that services has not been afforded.

On February 2, 2024 I went to Henry Ford "pain clinic," and had an consultation with NP, Roxanne, and Dr. Sallown. Roxanne advised what she had interpreted from the MRI; talked about previous surgery, the failed "scan," and their plan to provide "relief" for my back pain. She left, and returned with Dr. Sallown, who did a, brief, examination; voiced his interpretation of the MRI, and reiterated they were going to provide relief for my back pain. Dr. Sallown said that he was in process of scheduling dates, when he'd be able to do "injections" into my back, that should provide relief for 3 to 6 months. I wanted to know what he was planning to "inject" into my

"Statement of Claim" cont'd. 9.)
back; how often, and if I should be concerned? He named a drug that later, Ms. Groff identified as an "steriod;" he would do injections in 6 month intervals, and "It would be dangerous to inject it through the scar, obviously, I won't do that; you shouldn't be concerned." I asked what this would do for the pains in my lower extremities; he wasn't sure, but offered: "We can consider burning some nerve ends." I asked if extended walks, or exercising, would exacerbate my condition. He said that I could walk, or exercise, up to the point of pain, but "never" through that point. He declined to put that in writing; he said I'd need to get my instructions from my "medical provider." He offered me a choice of 1 of 3 pain medications, the same ones that NP Groff had offered, for me to take until the injections were scheduled; I could "decide on which one" when I see my provider. I informed him that my memory isn't what it once was, nor, my attention span; I'd need for him, and/or Roxanne, to put all they had said in writing, for me to read, possibly, a few times; share it with my family, and pray; he said he would.

 I offer, sincere, apologies for the length of my statement; I wanted to be as thorough, and

"Statement of Claim" cont'd. 10.)
and clear, as I could be. Richard C. Gentry

IV. **Relief**

State briefly and precisely what you want the court to do for you.

I ask the court to appoint a surgeon/specialist, who is not beholden to the State, its agency, or contractor, to consult with the plaintiff, and that the decision made during that consultation be binding on the defendants. I ask this because I believe that, only, an impartial medical professional would recommend what's best for the patient. "see attach"

V. **Notice to Plaintiff Regarding Consent**

In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, you are hereby notified that the United States magistrate judges of this district court may, upon your consent, conduct any or all proceedings in this case, including a jury trial and entry of a final judgment. If you consent, any appeal from a judgment entered by a magistrate judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of a district court.

Magistrate judges have greater flexibility in their schedules than district judges, who have heavy criminal caseloads that take priority over civil trials. Accordingly, the magistrate judges are generally able to schedule prisoner civil rights cases for jury trial much sooner, and they are able to provide firm trial dates. Magistrate judges are experienced trial judges who handle a great number of prisoner civil rights cases.

Your decision to consent to the dispositive jurisdiction of a United States magistrate is entirely voluntary. If you do not consent to a magistrate judge, the case will be randomly assigned to a district judge. The magistrate judge already assigned to this case would continue to decide all pretrial matters and would handle all dispositive motions by report and recommendation.

Please check **ONE** box below to indicate whether you voluntarily consent to proceed with a United States magistrate judge or if you would instead prefer that the case be assigned to a district judge.

[X] I hereby voluntarily consent to the United States magistrate judge conducting all proceedings in this case, including entry of a final judgment and all post-judgment matters.

[ ] I request that this case be assigned to a district judge.

March 4, 2024
Date

Richard C. Gentry
Signature of Plaintiff

**NOTICE TO PLAINTIFF(S)**

The failure of a *pro se* litigant to keep the court apprised of an address change may be considered cause for dismissal.

- 5 -    (W.D. Mich. Form – Last Revised: September 2021)

Attachment to page 5, "Relief."

I ask that the court order "Grand Prairie Healthcare Services, P.C. to pay One hundred thousand dollars ($100,000.00) in actual damages, and that a jury decide what punitive damages to assess. I ask this because I believe "Grand Prairie..." could afford to pay, much, more for their failure to remedy a wrong.

I ask that the court order Doctor Coleman; PA, Ouellette; Nathan Mikel; and NP, Sarah Riley, to pay Fifty thousand dollars ($50,000.00) each, in actual damages, and that the jury decide on punitive damages. I ask this because I believe these defendants were, directly, culpable in failing to address my "serious medical needs."

I ask that the court order Connie Lester to pay Twenty-five thousand dollars ($25,000.00) in actual damages, and that a jury decide on punitive damages. I ask this because Ms. Lester made an, conscientious, decision to be complicit in the "pattern" that "delayed," and "denied" services for plaintiff "serious medical needs."



t Court
Building
t., NW
, MI 49503

Richard Charles Gentry #132047
Lakeland Correctional Facility
141 First St.
Coldwater, Michigan 49036

U.S. Distric[t]
399 Federal
110 Michigan
Grand Rapids