UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICHARD CHARLES GENTRY,

                Plaintiff,

v.

GRAND PRAIRIE HEALTHCARE
SERVICES, P.C. et al.,

                Defendants.

_____/

Case No. 1:24-cv-240

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.16.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Grand Prairie Healthcare Services, P.C., Ouellette, Mikel, Riley, and Lester. The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment and Americans with Disabilities Act (ADA) claims against Defendant Coleman. Plaintiff's Eighth Amendment claim against Defendant Coleman remains in the case. Additionally, the Court will grant Plaintiff's motion to supplement his complaint (ECF No. 4) and deny Plaintiff's motion for appointment of counsel (ECF No. 5).

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

<u>Discussion</u>

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Grand Prairie Healthcare Services, P.C., and the following LCF medical personnel: Doctor Unknown Coleman, Physician Assistant Margaret Ouellette, Health Unit Manager Nathan Mikel, Nurse Practitioner Sarah Riley, and Health Information Manager Connie Lester.

Plaintiff alleges that Defendant Ouellette had been Plaintiff's medical provider "for years," and was aware of Plaintiff's medical history and "infrequent" lower back and extremity pain. (ECF No. 1, PageID.6.) Defendant Ouellette attributed Plaintiff's complaints to age and suggested that Plaintiff walk and exercise more often. (*Id.*)

In December 2021, Plaintiff sent a kite to Defendant Ouellette in anticipation of Plaintiff's chronic care visit scheduled for March 2022, and informed Defendant Ouellette that his pains were becoming more frequent. (*Id.*) When Plaintiff learned that the scheduled visit would not take place, he sent kites to "healthcare." (*Id.*, PageID.6–7.)

On March 25, 2022, non-party Nurse Schultz performed an "assessment" of Plaintiff's "symptoms." (ECF No. 1, PageID.5, 7.) Nurse Schultz advised Plaintiff to limit all activities and that his provider would contact him "soon." (*Id.*, PageID.7.) Plaintiff sent several kites and grievances. (*Id.*) On May 2, 2022, Defendant Mikel responded to one of Plaintiff's kites, informing Plaintiff that he had submitted one kite for pain since December 2021. (*Id.*) From May 1, 2022, to June 14, 2023, Plaintiff sent Defendant Mikel over a dozen kites and filed two grievances against him. (*Id.*)

On May 18, 2022, Defendant Ouellette performed another "assessment," and advised Plaintiff that his symptoms would appear to indicate that Plaintiff had nerve damage, which Defendant Ouellette had previously discussed with Plaintiff. (*Id.*) Defendant Ouellette explained that "protocol" required that she begin with x-rays, physical therapy, and an EMG. (*Id.*)

Plaintiff received x-rays on June 13, 2022. (*Id.*, PageID.8.) Plaintiff was seen by Defendant Ouellette on September 13, 2022, where Plaintiff learned of the results of his x-ray. (*Id.*) Defendant Ouellette told Plaintiff that he had a "scrunched up disk" and "degenerative disc disease." (*Id.*)

On October 5, 2022, Plaintiff sent a kite to Defendant Lester requesting a copy of Plaintiff's medical records. (*Id.*, PageID.9.) Plaintiff proceeded to send "over a half dozen" additional kites, and a grievance on December 22, 2022. (*Id.*) Defendant Lester's "action deprived [Plaintiff] of the opportunity" to see Plaintiff's medical records regarding his "scrunched up disk." (*Id.*)

On October 18, 2022, Defendant Ouellette told Plaintiff that she was requesting an EMG. (*Id.*, PageID.8.)

On October 20, 2022, Plaintiff sent a kite to Defendant Mikel stating, "Ouellette has failed to provide treatment or treatment plan." (*Id.*, PageID.7.) Defendant Mikel responded, "That is the treatment plan." (*Id.*) Defendant Coleman denied Defendant Ouellette's EMG request. (*Id.*, PageID.8–9.) On December 12, 2022, Defendant Mikel informed Plaintiff that Defendant Ouellette's EMG request had been denied and that a plan would be discussed with Plaintiff at his next appointment with Defendant Ouellette. (*Id.*, PageID.7–8.) That appointment was originally scheduled for March 2023, but did not take place. (*Id.*)

On May 4, 2023, Plaintiff had a visit with Defendant Ouellette. (*Id.*, PageID.10.) Defendant Ouellette introduced Defendant Riley as Plaintiff's new medical provider. (*Id.*) During the visit, Defendant Riley loudly shouted at Plaintiff to "get out!" (*Id.*)

Plaintiff again saw Defendant Riley on June 12, 2023. (*Id.*) Defendant Riley consulted her computer and told Plaintiff that he was there to have his blood pressure and breathing checked. (*Id.*) When Plaintiff told her that he was there for a chronic care visit, she ignored him, checking Plaintiff's breathing and telling Plaintiff that he could go. (*Id.*) Plaintiff later learned that his "medication" was not renewed. (*Id.*, PageID.11.) Plaintiff filed a grievance against Defendant Riley but did not receive a response. (*Id.*)

Non-party "Ms. Ruhs" performed an assessment of Plaintiff on July 14, 2023. (*Id.*) She provided Plaintiff with a print-out of exercises. (*Id.*) Plaintiff asked to be referred to a provider, but she told Plaintiff that policy required that he first receive three assessments. (*Id.*)

On July 21, 2023, Plaintiff presented to healthcare and saw non-party "Ms. Bowerman." (*Id.*) Ms. Bowerman reiterated the three-assessment policy and said, "Let's get it done," but Plaintiff refused and left without being assessed. (*Id.*)

Plaintiff kited Defendant Grand Prairie Healthcare Services on July 29, 2023. (*Id.*) Defendant Mikel responded, telling Plaintiff that he needed to send a kite to healthcare, but Plaintiff did not do so. (*Id.*)

On August 10, 2023, Plaintiff sent a kite to inmate accounting. (*Id.*) Thereafter, on August 14, 2023, Plaintiff was called to healthcare and seen by non-party Ms. Groff. (*Id.*, PageID.12.) She resubmitted the request for an EMG and, on August 18, 2023, Plaintiff was notified that he had been approved. (*Id.*) Plaintiff received pain medication within 2 days and, on October 16, 2023, received an EMG. (*Id.*) Plaintiff was again seen by Ms. Groff on November 3, 2023, and was told that he would receive an MRI in December. (*Id.*)

On December 8, 2023, Plaintiff went to Henry Ford Hospital for an MRI. (*Id.*) After multiple unsuccessful attempts to perform the scan, the unidentified MDOC transportation officer

told the MRI technician that he needed to leave because of his "work schedule." (*Id.*, PageID.13.)
The technician told the officer, "They can send if [sic] back for it." (*Id.*)

On February 2, 2024, Plaintiff was seen by non-party medical professionals at the Henry
Ford Pain Clinic, who interpreted Plaintiff's MRI results, performed an examination, discussed
Plaintiff's previous surgery, and told Plaintiff that they could provide him with steroid injections
in his back that would provide relief for 3–6 months. (*Id.*) Non-party Dr. Sallown also offered that
they could burn some nerve ends. (*Id.*, PageID.14.) Dr. Sallown also told Plaintiff that he could
continue to walk and exercise but would need to get those instructions from his medical provider.
(*Id.*) Dr. Sallown also offered Plaintiff a choice of pain medications, one of which had been given
to Plaintiff by Ms. Groff. (*Id.*)

Plaintiff claims that, because of the delay in treatment, Plaintiff has experienced
"discomfort and pains." (*Id.*, PageID.8.) He has been unable to participate in most "physical
activities, and contests, that offered benefits, or compensation," and has been restricted in the type
of work that he could perform. (*Id.*) Plaintiff broadly claims that "Defendants" were informed of
Plaintiff's symptoms "via medical kites, word or mouth, and/or assessments." (*Id.*, PageID.5.)

Plaintiff brings claims for violation of his Eighth and Fourteenth Amendment rights and
rights under the ADA. (ECF No. 1, PageID.5.) He also alleges a "Monell claim." (*Id.*) Plaintiff
seeks injunctive and monetary relief. (*Id.*, PageID.16–17.)

## II.     Motion to Supplement Pleading

On April 5, 2024, Plaintiff filed a "Motion to Supplement Pleading" pursuant to Federal
Rule of Civil Procedure 15(d), which requests additional injunctive relief. (ECF No. 4, PageID.28.)
Under Rule 15(d) of the Federal Rules of Civil Procedure, a party may seek, and the court may
permit supplemental pleadings "setting out any transaction, occurrence, or event that happened
after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

Plaintiff's request to supplement contains no factual allegations and fails to indicate whether his supplement is related to events that occurred before or after the filing of the original complaint. *See T Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311, 317 n.4 (3d Cir. 2019) (holding that "amended pleadings relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; [supplemental pleadings] deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings" (alteration in original)); *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 7 (1st Cir. 2015) (recognizing that Rule 15(d) does not permit a Plaintiff to add events that occurred prior to the filing of the complaint). Supplementation under Rule 15(d) is not proper under these circumstances. *See Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997); *see also* 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure, § 1510 (1990).

Nonetheless, "Rule 15 sets a liberal policy in favor of permitting parties to amend their pleadings, and courts have interpreted the rule to allow parties to add new claims, defenses, and parties to the lawsuit." *Mattox v. Edelman*, 851 F.3d 583, 592 (6th Cir. 2017) (discussing Rule 15(d)). Accordingly, the Court will grant Plaintiff's motion and allow the supplement to the complaint.

III.    **Motion for Appointment of Counsel**

Plaintiff has also filed a motion to appoint counsel, claiming that he "lacks the ability to investigate all the 'facts' relevant to his claim," that he requires medical and expert witnesses, and that justice demands the appointment of counsel in this case. (ECF No. 5.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel,

in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this time, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel, (ECF No. 5), will, therefore, be denied.

## IV.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of

prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.      Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under Section 1983

is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266,

271 (1994). Here, Plaintiff brings claims for violation of his Eighth and Fourteenth Amendment

rights.

### 1.      Eighth Amendment

Plaintiff alleges that Defendants violated his Eighth Amendment rights by denying or

delaying in providing him medical care. (ECF No. 1, PageID.8.) Plaintiff explains that, because of

the delays, he experienced pain and discomfort, an inability to perform unidentified physical

activities, and an inability to perform certain jobs, thus reducing his ability to earn money. (*Id.*)

"The Supreme Court has long recognized that the government has a constitutional

obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d

554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*,

894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.

2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the

serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d

693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's

failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardeman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence...: A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

Because Plaintiff alleges that he suffers from a degenerative condition and that his pain and discomfort was significant enough to affect his ability to perform various activities, the Court will assume, at this stage in the proceedings, that Plaintiff has satisfied the objective component of a deliberate indifference claim. The subjective element as to each Defendant will be addressed in turn.

### a. Defendant Grand Prairie Healthcare Services, P.C.

Plaintiff alleges that Defendant Grand Prairie Healthcare Services, P.C. (Grand Prairie), maintained "custom[s], protocol, and/or policies" that resulted in the delay of Plaintiff's medical care, (ECF No. 1, PageID.5), and failed to properly supervise its subordinates in the provision of Plaintiff's medical care (*id.*, PageID.6). These conclusory allegations are insufficient to state an Eighth Amendment claim under Section 1983.

A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like Grand Prairie—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)), abrogation on other grounds recognized by *Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 559 (6th Cir. 2014). However, the requirements for a valid Section 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of Section 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (same); *Rojas v.*

12

*Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same). This means that Defendant Grand Prairie, like a governmental entity, may be held liable under Section 1983 only if it actually caused a constitutional deprivation. *See Starcher*, 7 F. App'x at 465 (citing *Monell*, 436 U.S. at 690).

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 694). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508–09 (6th Cir. 1996).

Here, the only policy that Plaintiff attributes to Grand Prairie is one that requires three assessments before a visit to medical provider. The Court finds this policy unconnected to Plaintiff's alleged constitutional violations. Plaintiff does not allege that Defendant Coleman denied Defendant's Ouellette's request for an EMG as a result of this policy (ECF No. 1,

PageID.9), or that this policy was the moving force behind the decisions to deny Plaintiff chronic care visits (*id.*, PageID.8, 11) or a renewal of his medication (*id.*, PageID.11).

Plaintiff's allegations are similarly deficient with regard to his failure-to-supervise claim. To impose municipal liability under this theory, a plaintiff must show that: (1) the defendant entity was aware, or on notice, that its employees committed or were likely to commit constitutional violations; (2) it chose not to take corrective action with deliberate indifference to the consequences for individuals' constitutional rights; and (3) the lack of corrective action actually caused the alleged constitutional violation. *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010). Rather than alleging facts that could plausibly sustain such a claim, Plaintiff simply alleges conclusions that fail under *Twombly* and *Iqbal*. Plaintiff provides no factual content to suggest that Defendant Grand Prairie was deliberately indifferent to his or other inmates' rights. *See Doe v. Claiborne Cnty.,* 103 F.3d 495, 508 (6th Cir. 1996). He alleges in a conclusory fashion that he kited Defendant Grand Prairie; however, Plaintiff was informed that he needed to kite healthcare. (ECF No. 1, PageID.11.) There is no indication that Defendant Grand Prairie received kites from within the prison system or was otherwise aware of Plaintiff's complaints. The lack of similar instances of alleged unconstitutional conduct, or other facts putting Defendant Grand Prairie on notice that its staff were likely to commit constitutional violations by improperly denying or delaying medical care, dooms Plaintiff's failure-to-supervise claim.

Overall, Plaintiff fails to allege facts that would support a plausible *Monell* claim against Defendant Grand Prairie. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 388–89 (6th Cir. 2017) (confirming that the Supreme Court's decisions in *Twombly* and *Iqbal* apply to *Monell* claims); *Rayfield v. City of Grand Rapids*, 373 F. Supp. 3d 962, 977 (W.D. Mich. 2018) ("Conclusory

assertions [of a policy or custom] are not enough to state a Twombly plausible *Monell* claim.").
Therefore, his Eighth Amendment claims against this Defendant will be dismissed.

### b.  Defendant Coleman

Plaintiff alleges that Defendant Ouellette performed an assessment of Plaintiff's symptoms
and concluded that "protocol" required that she begin with x-rays, physical therapy, and an EMG.
(ECF No. 1, PageID.7) Plaintiff received x-rays, but when Defendant Ouellette ordered the EMG,
Defendant Coleman denied Defendant Ouellette's request without independent examination or
assessment. (*Id.*, PageID.8–9.) At this early stage in the proceedings, the Court will allow Plaintiff
to proceed with his Eighth Amendment claim against Defendant Coleman.

### c.  Defendant Ouellette

Plaintiff alleges that Defendant Ouellette was Plaintiff's medical provider "for years."
(ECF No. 1, PageID.6.) When Plaintiff described infrequent lower back and extremity pain,
Defendant Ouellete suggested that Plaintiff exercise more often. (*Id.*) However, as Plaintiff's pains
increased in frequency, Defendant Ouellette also changed her treatment recommendations,
performing another assessment and recommending x-rays, physical therapy, and an EMG in May
2022. (*Id.*, PageID.7.) In June 2022, Plaintiff received the x-rays ordered by Defendant Ouellette;
in September 2022, Defendant Ouellette informed Plaintiff of the results; and in October 2022,
Defendant Ouellette requested that Plaintiff undergo an EMG. (*Id.*, PageID.7–8.) In December
2022, Defendant Ouellette informed Plaintiff that her request for an EMG had been denied. (*Id.*,
PageID.8.) Plaintiff alleges that an appointment scheduled with Defendant Ouellette in March
2023, was cancelled; however, Plaintiff does not indicate that Defendant Ouellette was responsible
for the cancellation. (*Id.*) Plaintiff saw Defendant Ouellette in May 2023, at which point Plaintiff's
care was transferred to Defendant Riley. (*Id.*, PageID.10.) Plaintiff's reference to a lack of

"renew[al]" of his medication by Defendant Riley indicates that, during Defendant Ouellette's care, Plaintiff had been medicated. (*Id.*, PageID.11.)

Plaintiff may disagree with the treatment that he was provided by Defendant Ouellette; however, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (internal quotation marks omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258

16

F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 604–05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). Unlike in a state malpractice action, the claimant must show that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). Plaintiff's allegations against Defendant Ouellete do not rise to that standard. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Ouellete.

### d. Defendant Mikel

Plaintiff's allegations against Defendant Mikel concern Plaintiff's kites and grievances from May 2022, through June 2023. Plaintiff describes that, after being told by Nurse Schultz to limit all activity and to wait for contact from his medical provider, Plaintiff sent several kites and grievances to Defendant Mikel. (ECF No. 1, PageID.5, 7.) However, as described above, Plaintiff received treatment from his medical care providers during the time period that he was sending kites to Defendant Mikel. The fact that Plaintiff was dissatisfied with Defendant Mikel's responses to his kites during this time does not plausibly suggest deliberate indifference to Plaintiff's need for medical care. *See Darrah*, 865 F.3d at 372. Plaintiff's Eighth Amendment claim against Defendant Mikel will be dismissed.

### e.  Defendant Riley

Plaintiff alleges that, when introduced to Defendant Riley on May 4, 2023, Defendant Riley shouted at Plaintiff to "get out!" (ECF No. 1, PageID.10.) Plaintiff also alleges that, when he next saw Defendant Riley on June 12, 2023, Defendant Riley consulted her computer, told Plaintiff that he was there to have his blood pressure and breathing checked, and ignored Plaintiff when told Defendant Riley that he was there for a chronic care visit. (*Id.*, PageID.10–11.)

Notably absent from Plaintiff's factual allegations against Defendant Riley is any indication that Defendant Riley was aware of Plaintiff's complaints of pain and was deliberately indifferent to those complaints. It is Plaintiff's obligation at this stage to plead sufficient factual content to plausibly suggest an Eighth Amendment claim against Defendant Riley. Because he fails to do so, Plaintiff's claim against Defendant Riley will be dismissed.

### f.  Defendant Lester

Plaintiff alleges that Defendant Lester failed to provide Plaintiff with a copy of his medical records. (ECF No. 1, PageID.9.) However, Plaintiff does not allege that Defendant Lester was ever directly involved in the provision of medical care to Plaintiff or that Defendant Lester was aware of but deliberately indifferent to Plaintiff's need for medical care in a manner that resulted in further harm to Plaintiff. Plaintiff's Eighth Amendment claim against Defendant Lester is nothing more than a legal conclusion. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendant Lester.

### 2.  Fourteenth Amendment

Plaintiff indicates that he intends to bring a claim for violation of his Fourteenth Amendment rights. (ECF No. 1, PageID.5.) He does not elaborate as to the basis of his claim.

18

The Court can only presume that Plaintiff intends to bring a Fourteenth Amendment due process claim related to the denial of his administrative grievances. However, Plaintiff cannot state such a claim. Plaintiff has no Fourteenth Amendment due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001). Because Plaintiff has no liberty interest in the grievance process, the denial of his administrative grievance could not deprive him of due process. The Court will dismiss Plaintiff's Fourteenth Amendment claims.

**B.     ADA Claims**

Plaintiff also makes brief reference to the ADA without providing the Court with any information as to his intended claim. The Court presumes that Plaintiff's ADA claim is brought pursuant to Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481– 82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or

benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532–33 (6th Cir. 2008), abrogation on other grounds recognized by *Anderson v. City of Blue Ash*, 798 F.3d 338 (6th Cir. 2015). The term "qualified individual with a disability" includes "an individual with a disability who, with or without...the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in Section 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted).

First, Plaintiff sues Defendants Coleman Ouellette, Mikel, Riley, and Lester, individually. Because Plaintiff may not pursue ADA claims against Defendants in their individual capacities, any intended ADA claims against Defendants in their individual capacities will be dismissed.

Second, as against Defendant Grand Prairie and Defendants Coleman Ouellette, Mikel, Riley, and Lester in their official capacities, Plaintiff states that he has been unable to participate in most "physical activities, and contests, that offered benefits, or compensation," and has been restricted in the type of work that he could perform. (ECF No. 1, PageID.8.) But Plaintiff does not allege that he was "qualified" for such activities within the meaning of the law, that Defendants were at fault for Plaintiff's inability to participate, or that discrimination was at play. Plaintiff

instead appears to ask this Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that Defendants violated the ADA. *See Iqbal*, 556 U.S. at 679. Plaintiff has not met his initial burden. The Court will dismiss Plaintiff's ADA claims.

<u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Grand Prairie, Ouellette, Mikel, Riley, and Lester will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment and ADA claims against Defendant Coleman. Plaintiff's Eighth Amendment claim against Defendant Coleman remains in the case. The Court will grant Plaintiff's motion to supplement his complaint (ECF No. 4) and deny Plaintiff's motion for appointment of counsel (ECF No. 5).

An order consistent with this opinion will be entered.


Dated:   May 15, 2024                          /s/ Sally J. Berens
                                               SALLY J. BERENS
                                               United States Magistrate Judge