UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD CHARLES GENTRY #132047,

          Plaintiff,

v.

GRAND PRAIRIE HEALTHCARE
SERVICES, P.C., et al.,

          Defendants.
_____/

Hon. Hala Y. Jarbou

Case No. 1:24-cv-240

**REPORT AND RECOMMENDATION**

Presently before me are Defendant Rickey Coleman D.O.'s Motion to Dismiss for Failure to State a Claim (ECF No. 109) and Plaintiff's Motion for Summary Judgment as to Defendant Coleman. (ECF No. 118.) On January 22, 2026, I notified the parties of my intention to recommend summary judgment for Defendant Coleman pursuant to Federal Rule of Civil Procedure 56(f)(1) and afforded them an opportunity to submit any additional materials they wished to be considered. (ECF No. 130.) Per that order, Plaintiff submitted additional materials on February 9, 2026. (ECF No. 132.)

Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant Coleman summary judgment, and **DENY** Defendant Coleman's motion to dismiss as **moot**.

## I. Background

Plaintiff Richard Gentry, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), sued several MDOC employees and contractors pursuant to 42 U.S.C. §

1983 alleging that they violated his rights under the Eighth Amendment due to deliberate indifference to his serious medical needs, namely his back, leg, and foot pain and numbness. The sole remaining Defendant is Rickey Coleman, D.O.

I briefly summarized Gentry's history of pain-causing spinal issues in my January 26, 2026 Report and Recommendation (ECF No. 131) as follows:

> Gentry, who is 71 years old, has a history of back, leg, and foot pain due to degenerative spine issues, for which he has received treatment while incarcerated with the MDOC. As of December 2018, Gentry had acute radiculopathy bilaterally with low back pain and numbness. (ECF No. 123-2 at PageID.1027.) During an August 22, 2018 visit with a neurologist, Gentry reported symptoms of paresthesia and difficulty walking. The doctor diagnosed radiculopathy of the lumbosacral region and polyneuropathy. (*Id.* at PageID.1030–31.) In September 2019, Gentry underwent an open laminectomy of L4-S1 with bilateral medial foraminotomy. (*Id.* at PageID.1038.) Still, he continued to experience back pain with radicular pain. (*Id.*)

(*Id.* at PageID.1092–93.)

> In his complaint, Gentry alleged:

> Doctor Colemans' [sic] complicity to the "pattern" of "delaying" was, extremely, detrimental. He extended the "delay" to where it seemed it would be indefinite. This doctor I had never seen, or heard of, not before or after his "denial." He made an "conscientious" [sic] decision to interrupt a prescribed "treatment plan" for non-medical reasons. He disagreed with a "qualified health professional," who had been my "primary" medical provider for years; directly participating in a constitutional violation. His action was egregious, deliberate, "grossly" negligent, and possibly irreparable. The future, ramifications of his action is yet to be determined, but the immediate effect was unconscionable, and devastating. He forced, further, continuance [sic] endurance of intense discomfort, and pains; anxiety, and emotional distress. It is my contention, and opinion that any defendant that had authority to remedy this wrong and didn't, is "directly" culpable.

(ECF No. 1 at PageID.8–9.)

The Court provided a more focused summary of Gentry's claim: Gentry's medical provider, Margaret Ouellette, P.A., performed an assessment of Gentry's symptoms and determined that the "protocol" required that she begin with x-rays, physical therapy, and an EMG. Although Gentry received the x-rays, Dr. Coleman denied P.A. Ouellette's request for an EMG

2

without independent examination or assessment. (ECF No. 6 at PageID.50.) Gentry's medical

records, some of which he attaches as an exhibit to his motion, show that on October 24, 2022, Dr.

Coleman recommended an alternative treatment plan (ATP) to the EMG as follows:

> ATP: Please try conservative management, including NSAIDS and activity modifications. If no improvement or worsening after this, consider HEP. It appears this condition is not significantly interfering with his required ADLs in the correctional setting, (his ability to eat, go to the toilet, shower or dress self). Per Dr. Coleman.

(ECF No. 118-1 at PageID.726.)

Despite activity modification and HEP stretches, Gentry continued to experience back pain

and radicular pain in his lower extremities. As previously summarized, he underwent additional

treatment for his symptoms:

> In early February 2024, Gentry was seen at the Henry Ford Hospital pain clinic for back pain and radicular pain. (*Id.* at PageID.1038.) Following the visit, Gentry's medical provider, Suzanne Groff, NP, established a plan of care (POC). NP Groff noted that Plaintiff had a history of chronic low back pain and expressed "complaints of continued low back pain down his posterior thighs," "occasional sharp shooting/burning pains with movement," "numbness/tingling down his legs into his feet," "difficulty getting of bed in the morning," and a need to stop and rest frequently due to pain. (*Id.*) NP Groff also noted that a lower extremity EMG study conducted in October 2023 indicated advanced acute radiculopathy bilaterally, and a December 2023 MRI study of the lumbar spine indicated that Gentry had multilevel degenerative changes and lumbar spondylosis. (*Id.*)
>
> The pain clinic visit resulted in a recommendation for a trial of Caudal ESI (epidural steroid injection), which required MDOC staff approval. (*Id.*) By February 6, 2024, Caudal ESI had been approved and was pending scheduling. (*Id.* at PageID.1040.) NP Groff prescribed Gentry Naproxen 375 mg twice per day as needed and encouraged him to continue with activity modifications, HEP (home exercise program) stretches, and over-the-counter medications as needed. (*Id.* at 1040, 1043.) Gentry received the Caudal ESI on March 19, 2024. (*Id.* at PageID.1047.)

(ECF No. 131 at PageID.1093.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts

are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III.  Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or

involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

### A.      Objective Component

Gentry has not presented evidence necessary to establish the objective component of his claim. The medical evidence of record shows that Gentry's degenerative spine issues that caused pain in his back, legs, and feet were a chronic condition that the MDOC had treated for years. This was not a condition requiring emergent care. Rather, Gentry's claim against Dr. Coleman is based on delay in obtaining an EMG—a diagnostic test to measure the health and function of his nerves and muscles—which he ultimately received in October 2023.

To prevail on a claim of this nature, Gentry must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citations omitted). Generally, the required medical evidence must be in the form of expert testimony. *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). Because Gentry presents no expert testimony, his claim fails. While Gentry relies on his own analysis of changes in his spinal condition demonstrated by his comparison of the December 2023 MRI study with the 2018 MRI study (ECF No. 132 at PageID.1104–06; ECF No. 132-1; ECF No. 132-2), his lay opinion is not an adequate substitute for the type of evidence that *Phillips* requires.

### B.   Subjective Component

As for the subjective component, Gentry "must present evidence from which a trier of fact could conclude 'that [Dr. Coleman] was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847). Here, the only evidence pertaining to Dr. Coleman's recommendation shows that in formulating an ATP, he was exercising his medical judgment that conservative treatment should be pursued before obtaining more diagnostic studies, particularly given Gentry's apparent ability to perform his activities of daily living in the prison setting. *See Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Use of medical judgment is not a basis for an Eighth Amendment claim unless a plaintiff can show that that judgment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). As noted above, Gentry has not done so here.

While it is clear that Gentry disagrees with Dr. Coleman's decision to hold off on the EMG pending conservative measures, "a patient's disagreement with his physician[] over the proper course of treatment [is], at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (citations omitted); *see also Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)). Moreover, Dr. Coleman's and P.A. Oullette's difference of opinion about the timing of an EMG is no basis for an Eighth Amendment claim. *See Carter v. Michigan Dep't of Corrs.*, No. 12-cv-12621, 2013

7

WL 5291567, at *4 (E.D. Mich. Sept. 19, 2013) ("A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs.") (quoting *Acosta v. Naphcare*, No. 09-cv-1998, 2010 WL 3522356, at *5 (D. Nev. Sept. 2, 2010)).

In short, Gentry has failed to show that his "evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. He cannot establish either the objective or subject prong of his claim. Rather, the record evidence shows that Dr. Coleman is entitled to summary judgment on Gentry's claim.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **DENY** Gentry's motion for summary judgment (ECF No. 118), **GRANT** Defendant Coleman summary judgment, and **DENY** Defendant Coleman's motion to dismiss (ECF No. 109) as **moot**.

Dated: March 19, 2026

_/s/ Sally J. Berens_
SALLY J. BERENS
U.S. Magistrate Judge

## <u>NOTICE</u>

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).